IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GROVE EQUITIES LLC,<br><br>*Plaintiff*,<br><br>-against-<br><br>RANDI RASPANTI and LARRY RASPANTI,<br><br>*Defendants*. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff Grove Equities LLC ("**Plaintiff**"), by its attorneys, alleges as follows as and for its Complaint against defendants Larry Raspanti ("**Debtor**" or "**Mr. Raspanti**") and Randi Raspanti ("**Defendant Transferee**" or "**Ms. Raspanti**" and, together with Mr. Raspanti, referred to as "**Defendants**").

**NATURE OF ACTION**

1. This action is commenced by a New York landlord against a New Jersey couple to pursue fraudulent-conveyance claims initially brought against them in a broader pending litigation in New York State but which have been discontinued without prejudice and relocated to this Court in New Jersey where Defendants reside and certain transferred assets are located.

2. The state court case pending in New York State Supreme Court, New York County, is captioned *Grove Equities, LLC v. Hair Painters LLC, et al.*, with index number 650509/2023 (the "**NY Action**"). At base, it involves non-payment claims that arise against Mr. Raspanti, his now-dissolved company Hair Painters LLC, and his other associates from failure to pay certain lease and guaranty obligations in connection a leasing relationship with Plaintiff together with other related wrongdoing by Defendants including, *inter alia*, fraudulent conveyance of assets away from themselves and the now-dissolved company.

3. The claims against Mr. Raspanti still continue in the NY Action but this Action pursues a narrow subset of the fraudulent conveyance claims asserted against Ms. Raspanti (and nominally Mr. Raspanti) in connection with the transfer of a residence located at 10 Sutherland Road, Montclair, New Jersey 07042 (the "**Defendant Residence**") out of the name of Mr. Raspanti and into the name of his wife only in June of 2020 without consideration during periods when he and his company were in escalating default of their obligations to Plaintiff and creditors at large.

4. As detailed further below, this transfer of the Defendant Residence out of the name of Mr. Raspanti solely to the name of his wife while in deepening default of his obligations and threatened with claims and impending litigation by creditors reflects a classic fraudulent conveyance under provisions of both New York's Debtor Creditor Law (the "**DCL**") as amended in 2020 by the Uniform Voidable Transactions Act ("**UVTA**") which should apply here as well as the corresponding provisions of the fraudulent conveyance laws of New Jersey which provide for the same substantive relief.

## PARTIES

5. Plaintiff is a New York limited liability company with a principal place of business located at 1 West 34th Street, suite 703, New York, New York 10001.

6. Upon information and belief, Mr. Raspanti is an individual with a principal residence located at 10 Sutherland Road, Montclair, New Jersey 07042.

7. Upon information and belief, Ms. Raspanti is an individual with a principal residence located at 10 Sutherland Road, Montclair, New Jersey 07042.

## JURISDICTION AND VENUE

8. Jurisdiction is property in this Court pursuant to 28 U.S.C. § 1332 because Defendants are residents of New Jersey, Plaintiff is a limited liability company organized in the State of New York and without members in New Jersey and with its principal place of business in

New York, and the amount in controversy, without interest, cost, or attorneys' fees exceeds the amount specified in 28 U.S.C. § 1332. Venue is proper in this Court pursuant to US.C. § 1391(b)(1) because Defendants reside in the district.

## STATEMENT OF FACTS

9. As noted above, this Action is commenced in parallel with a pending NY Action with the facts of that case intertwined with those of this case such that a recital of relevant facts related to that case is necessary for purposes here and recited below followed by a recital of facts relevant to this case.

### I. Relevant Facts Related to the Pending NY Action

10. As further detailed below, Plaintiff initially commenced the NY Action in January of 2023 against not only Defendants but also associated parties (collectively, "**NY Defendants**") including the business partner of Mr. Raspanti, Vicki Hunter ("**Hunter**" and, together with Mr. Raspanti, referred to as "**Owners**"), their now-dissolved hair salon and beauty company Hair Painters LLC ("**Tenant**"), its manager Christine Tsvetanov ("**Manager**"), and the to-be-named entity through which Owners have operated the salon business of Tenant d/b/a Whittemore House Salon, *et al* ("**Successor**") after dissolving the company in 2021.

11. The wrongdoing of Defendants underlying the NY Action occurred and continues to occur in connection with a commercial leasing relationship between Plaintiff and Tenant that began in 2008 with Owners leasing a retail premises (the "**Premises**") in the building of Plaintiff located at 43-45 Grove Street, a/k/a 45 Grove Street, New York, New York (the "**Building**") through Tenant pursuant to a long-term lease (the "**Lease**") with personal guaranties from Owners (the "**Guaranty**") and ended with Tenant abandoning the Premises in December of 2020 leaving a million-dollar liability to Plaintiff, then attempting to avoid payment to Plaintiff by dissolving Tenant and shifting the business and assets of the company to themselves.

12. Plaintiff commenced the NY Action against NY Defendants at the beginning of 2023 including contract claims against Tenant and Owners for breach of the Lease and the Guaranties, along with fraudulent conveyance claims against them for dissolving Tenant and diverting the business and assets of Tenant for themselves, fraud claims for related misrepresentations in connection with the relationship, as well as associated alter-ego and veil-piercing claims against Owners for their wrongful conduct against Plaintiff through Tenant.

13. A more detailed recital of relevant facts is included below insofar as, *inter alia*, these facts are relevant to establish the liability of Mr. Raspanti to Plaintiff which is currently being determined in the NY Action but nonetheless relevant for purposes of this case.

A. **The Leasing Relationship Between the Parties**

14. Plaintiff is and has been during all relevant periods the owner the Building known as 43-45 Grove Street, a/k/a 45 Grove Street, New York, New York.

15. Tenant is a now-dissolved operating entity of jointly owned and operated by Owners through which they established and operated a high-end hair and beauty salon business known as, *inter alia*, "Whittemore House" a/k/a "Whittemore House Salon" (the "**Tenant Business**") at the Premises between 2008 and 2020 with Manager acting as managing director of operations.[1]

16. In 2008, Tenant leased the Premises from Plaintiff pursuant to a ten-year Lease dated May 9, 2008 which naturally expired on May 31, 2018 with the obligations of Tenant under the Lease secured by, *inter alia*, the joint personal Guaranty from Owners executed contemporaneously with the Lease.

17. In 2018, at the request of Owners, Plaintiff agreed to extend the Lease first for an

---

[1] Marketing materials and press for Defendant reflect that the Tenant Business established at the Premises was a successful business servicing the fashion industry, high-end fashion companies and celebrities included, *inter alia*, Bono of U2, Sienna Miller, Kaia Gerber, Marc Jacobs, Gucci, Fendi and celebrities and companies of similar stature.

additional five (5) years and then for an additional ten (10) years – first memorialized in a five-year extension executed and returned to Plaintiff by Tenant and Owners in the middle of 2018 – and then a five-year modification agreement dated July 26, 2018 subsequently delivered to Plaintiff (the "**Extension**") which expired on May 30, 2028 (the "**Second Expiration Date**") with the obligations of Tenant secured by, *inter alia*, a continuing guaranty from Owners (the "**Extension Guaranty**" and, together with the Guaranty, referred to as the "**Guaranties**").

18. The Extension was negotiated between the parties by managing representative of Plaintiff, Daniel Lavian ("**Plaintiff Representative**"), and Manager with Manager having the stated and apparent authority to act on behalf of NY Defendants as their agent and representative in accordance with established course of dealing between the parties.

19. In negotiation of the Extension, in or around July of 2018, Manager delivered signature pages to Plaintiff Representative which she represented to him were validly executed by Owners on behalf of themselves and Tenant for purposes of the Extension and the Extension Guaranty and directed that Plaintiff Representative utilize the signature pages for this purpose with the purported knowledge and authorization of Owners.

20. In reliance upon the representations and directions of Manager, Plaintiff Representative accepted the Extension and the Extension Guaranty with the signature pages provided by Manager, countersigned the Extension on behalf of Plaintiff, and returned a set of countersigned documents to Tenant.

21. Thereafter, between 2018 and 2019, Tenant and Owners accepted the benefits under the Extension, performed under the Extension and the Extension Guaranty and accepted performance from Plaintiff in accordance with the agreements, and otherwise acted to induce Plaintiff to rely on them as valid agreements.

22. However, as further detailed in the sections below, Owners later claimed that the

Extension and the Extension Guaranty were invalid in an attempt to extract a rent discount from Plaintiff, and ultimately terminated performance to Plaintiff, and abandoned the Premises in December of 2020 with a million-dollar obligation to Plaintiff (and more).

### B. Relevant Terms of the Lease and the Guaranties

23. Terms of the Lease, the Extension and the Guaranties relevant to the claims of Plaintiff asserted against NY Defendants in this case are outlined below.

#### i. Exculpatory Provisions of the Lease

24. Relevant here, the Lease included numerous exculpatory provisions which allocated all risk and responsibility associated with use of the Premises and adverse events affecting performance under the Lease exclusively to Tenant.

25. Notably, the Lease expressly established that Tenant leased the Premises from Plaintiff on an "as is" basis without any representations or warranties by Plaintiff with respect to use of the Premises [*see, e.g.,* Lease, ¶¶ 20 and 167], and with Tenant solely responsible for use of the Premises in compliance with all applicable laws [*see, e.g., id.,* ¶ 6].

26. Further, the Lease established that all rent obligations of Tenant were unconditional in nature and payable "without notice, demand, counterclaim, setoff, deduction or defense" [*id.*, ¶ 45], without any abatement for force-majeure events [*see, e.g., id.*, ¶¶ 45 and 75], and without any right to assert counterclaims against Plaintiff in any nonpayment proceeding [*see, e.g., id.*, ¶ 74]. *See also id.*, ¶¶ 81, 92, 128 and 134.

#### ii. Ongoing Rent Obligations of Tenant under the Lease

27. The Lease required Tenant to make ongoing rent payments to Plaintiff which included, *inter alia*: (i) fixed rent payable each month pursuant to the Lease in the amount of $17,287.10 as of the expiration of the initial term of the Lease [*see, e.g., id.,* ¶ 44] (the "**Fixed Rent**") (and at a rate of $17,801.71 per month with annual escalations pursuant to the Extension)

6

[*see, e.g.*, Extension, ¶ 3(a)(i)]; and (ii) additional rents payable under the Lease such as its proportionate share of real estate taxes for the Building [*see, e.g.,* Lease, ¶¶ 43, 105, 131 and 132] and water charges [*see, e.g., id.*, ¶¶ 54 and 84] (collectively, "**Additional Rent**") and other monetary obligations to accrue under the Lease with "any monies due to the Plaintiff pursuant to the terms and conditions of this Lease" deemed "due and owing as additional rent" [*id.*, ¶ 81].

### iii. Default Obligations of Tenant under the Lease

28. In the event that Tenant defaulted on its obligations under the Lease, the Lease entitled Plaintiff to various default remedies against Tenant (collectively, the "**Default Remedies**") including, *inter alia*: (i) recovery of late charges of not less than five percent (5%) on unpaid rents [*see, e.g., id.*, ¶ 111]; (ii) recovery of default interest on all unpaid rents if "not made within ten (10) days after said sums become due" in an amount "equal to Citibank's Prime Rate" [*id.*, ¶ 155]; (iii) reimbursement for reasonable legal fees incurred by Plaintiff in connection with any default by Tenant under the Lease [*id.*, ¶ 133]; (iv) recapture of a rent concession of $66,250.00 provided by Plaintiff at the outset of the Lease [*id.*, ¶ 46]; (v) payment of holdover damages equal to "three (3) times the monthly rent" in the event that Tenant remained in the Premises after expiration of the term of the Lease [*id.*, ¶ 53]; (v) reimbursement for performance of the obligations of Tenant by Plaintiff [*id.*, ¶ 73]; (vi) recover possession of the Premises and termination of the Lease with all rights reserved to collect amounts owed as damages [*see, e.g., id.*, ¶¶ 18, 106 and 109]; (v) relet the Premises at the expense of Tenant with any deficiency in rents payable by Tenant [*see, e.g., id.*, ¶¶ 18 and 106]; and (vi) other additional default remedies provided for under the terms of the Lease.

### iv. The Obligations of Defendant Guarantors under the Guaranties

29. Pursuant to the Guaranty, Owners guaranteed the payment and performance of the obligations of Tenant under the Lease, with Owners expressly waiving any requirement of notice

7

as a precondition to liability under the Guaranty [*see, e.g.*, Guaranty, p. 2] and agreeing that their obligations under the Guaranty continued in the event of any renewal, modification or extension of the Lease [*see, e.g.*, *id.*, pp 2-3].

30. The Extension Guaranty reaffirmed the unconditional guaranty obligations of Owners with respect to the obligations of Tenant under the Lease and the Extension.

C. **The Defaults of Tenant and Owners Under the Lease and Guaranties After 2018 and Denial of the Validity of the Extension and Extension Guaranty**

31. Problems arose between Plaintiff and NY Defendants in connection with the leasing relationship after Owners attempted to extort a rent reduction from Plaintiff in 2019.

32. Since 2018, Tenant and Owners had accepted the benefits under the Extension and Extension Guaranty, performed under the Extension and Extension Guaranty and accepted performance from Plaintiff in accordance with the Extension.

33. However, when Plaintiff refused to agree to an extensive rent reduction in 2019, Owners advised Plaintiff Representative that they contended that the Extension and the Extension Guaranty were invalid, that they had not executed the Extension or the Extension Guaranty, and that the signature pages provided by Manager to Plaintiff Representative for the Extension and the Extension Guaranty in July of 2018 had not been provided with their knowledge or authorization for this purpose but rather only for the five-year extension.

34. This position was stated to Plaintiff Representative in communications with both Hunter and Mr. Raspanti in and around September of 2020.

35. As noted by Plaintiff at the time, this was a highly-disingenuous position which necessarily implicated fraudulent activity on the part of NY Defendants and/or Manager and subject NY Defendants to greater liability under the Lease and Guaranty insofar as, in the absence of the Extension, Tenant was liable to Plaintiff for, *inter alia*, holdover use and occupancy at "three (3) times the monthly rent" from the expiration of the Lease in May of 2018.  Lease, ¶ 53.

8

36. Once more, by multiple terms, the Guaranty established that the obligations of Owners continued through the "date of the Tenant's surrender" and did not terminate until "after the date of the Tenant's surrender" with each of Owners to "at all times remain liable under this Guaranty for all rent and additional rent that is due and owing or that accrues through the date of the termination of this Guaranty" without regard to "any renewal or modification or extension of the Lease which shall cover, apply to and incorporate all of the terms, covenants or conditions of any such renewals, modifications, or extensions without need of any notice or consent of the undersigned."

37. Moreover, Tenant and Owners had in fact delivered a five-year extension to Landlord in 2018 which included a continuation of the guaranty.

38. Nevertheless, Owners continued to cause Tenant to remain in possession of the Premises in mounting default of its obligations to Plaintiff into 2020 despite repeated demands for payment and notices of default by Plaintiff.

39. In December of 2020, Owners caused Tenant to abruptly abandoned the Premises, openly terminated all performance to Plaintiff, and disappeared from view leaving a multi-million-dollar liability owed by Tenant and Owners to Plaintiff.

### D.  The Fraudulent Transfer of Assets Away from NY Defendants in/After 2020

40. The NY Action asserted claims against NY Defendants for violations of fraudulent conveyance laws because Plaintiff discovered that, as the defaults of Tenant and Owners, under their lease and guaranties mounted in and after 2019, Owners themselves and through Tenant as their alter ego engaged in concerted activities to transfer assets to others to avoid payment of their obligations to Plaintiff.

#### i.  The Fraudulent Transfer of the Defendant Residence to Ms. Raspanti

41. For example, in June of 2020, Mr. Raspanti transferred his interest in the Defendant

9

Reference jointly owned by him and his wife, Ms. Raspanti, located at 10 Sutherland Road, Montclair, New Jersey 07042 for no consideration.

42. Recorded land records for the Defendant Residence reflect that the property was purchased in 2018 for $873,000 in the joint name of both of Defendants and, on June 7, 2020, Mr. Raspanti transferred his interest in the property to Ms. Raspanti "for one dollar."

43. Upon information and belief, the Defendant Residence was purchased and maintained with funds from Mr. Raspanti which emanated from income generated from business activities in New York and thereafter maintained with his income after delivery of the property to the name of his wife.

44. These transfers away from Mr. Raspanti reflect textbook fraudulent conveyances accompanied by all of the most classic indicia of fraudulent intent under New York Debtor Creditor Law (as well as New Jersey law) as, *inter alia*, it was made to an insider family member of Mr. Raspanti, with Mr. Raspanti continuing to retain possession and control of the subject property, in a transaction made while subject to significant claims and threatened with suit from Plaintiff, and made without fair consideration after/while he was incurring extensive debts to Plaintiff beyond his ability to repay them.

        ii.    **The Dissolution of Defendant and Fraudulent Transfer of the Tenant Business to Successor**

45. Plaintiff also discovered other similarly-egregious fraudulent conveyances away from Tenant by Owners.

46. For example, after causing Tenant to abandon the Premises in December of 2020, Owners promptly dissolved Tenant and shifted the business and assets of the company to themselves and another location and entity under their control just down the street from the Premises located at 237 West 4th Street, New York (the "**Successor Location**").

47. The transfer is a matter of public record.

48. Articles of dissolution for Tenant were filed with the State in February of 2021.

49. This transfer of the business of Tenant to this new location were (and still are) specifically referenced on the website of the Tenant Business [www.whs.nyc] currently states that "WHITTEMORE HOUSE HAS MOVED" to the Successor Location and continues to operate there.

50. Successor is the to-be-named entity through which Owners continue the Tenant Business today using the same management including Manager, employees, operating resources, good will and other assets of Tenant.

51. In addition, Plaintiff discovered that Owners dissolved Tenant and diverted all of its other assets for their own purposes as well including a line of beauty products owned by Tenant which Owners continue to produce and sell today and utilize in their own business activities.

### iii. The Liquidation of the Defendant Apartment in New York City

52. In addition, Plaintiff discovered that Owners continued to engage in activities to shift assets outside of New York State and beyond the reach of Plaintiff.

53. For example, Owners jointly own a cooperative apartment located at 300 East 4th Street, Unit 1B, New York, New York 10009 (the "**Defendant Apartment**") which Plaintiff discovered was in contract to sell to a third party prior to the commencement of the Action.

54. The sale of the only known property of Owners within the State directly coincided with threatened collection activities by Plaintiff and was consistent with the recent actions of Owners to fraudulent transfer assets to others to avoid payment to Plaintiff.

55. Mr. Raspanti was a New Jersey resident with no other known property within New York State.

56. Hunter is an Australian national who, on previous occasions, has openly indicated to Plaintiff Representative that she would simply depart New York State (and the country) if

Plaintiff obtained a substantial judgment against her.

57. Further, subsequent disclosures by Owners and their representatives since commencement of the NY Action indicate that they did in fact shift assets of Tenant outside of the state including the line of beauty products, their production and storage.

### E. Claims Asserted Against NY Defendants in the NY Action

58. The full extent of the damages to Plaintiff resulting from the defaults and wrongdoing of NY Defendants are not readily calculable and continue to accrue but include a million-dollar liability to Plaintiff including both contract and tort damages which Plaintiff pursued in the NY Action with claims including breach of lease, breach of guaranty, fraud, as well as alter-ego/veil-piercing liability and successor liability claims.

## II. THE FRAUDULENT CONVEYANCE CLAIMS ASSERTED AGAINST MS. RASPANTI DISCONTINUED AND REDIRECTED TO THIS ACTION

59. In the NY Action, Ms. Raspanti sought to dismiss the claims against her for lack of jurisdiction of the New York courts based upon residence in New Jersey and lack of minimum contacts with the State of New York.

60. By stipulations in the NY Action stipulation so-ordered by the Court, the parties agreed to discontinue claims against Ms. Raspanti without prejudice with all applicable statutes of limitations tolled for an extended period which permitted Plaintiff to relocate the case.

61. By this Action, Plaintiff relocates its fraudulent-conveyance claims against Ms. Raspanti with respect to the Defendant Residence to this Court with Mr. Raspanti added to the extent deemed a necessary party.

62. Plaintiff intends to seek a stay of this Action along with other related interim relief while the underlying obligations of Mr. Raspanti to Plaintiff are litigated in the NY Action.

### FIRST COUNT
**Fraudulent Conveyance Pursuant to DCL §§ 273, 274, 275, 276, 276-a, and 278**

**(Against Ms. Raspanti and Mr. Raspanti as Nominal Defendant)**

63. Plaintiff realleges each of the foregoing paragraphs of the Complaint.

64. During all periods in and after 2019, Mr. Raspanti was insolvent within the meaning of section 271(a) of New York Debtor Creditor Law with the sum of his debts greater than the sum of his assets at a fair valuation.

65. Further, under New York law, Mr. Raspanti is presumed to be insolvent at law throughout this period because, as alleged above, he had not been paying his debts to Plaintiff as they become due during the periods in question. *See, e.g.,* DCL § 271(b).

66. As set forth above, since 2019, Mr. Raspanti transfer assets away from himself to Ms. Raspanti as his wife and such transfers are presumed to be without fair consideration or reasonably equivalent value under New York law on account of her insider status.

67. The full extent of the transfers away from Mr. Raspanti to Ms. Raspanti during this period are not known or unknowable by Plaintiff outside of discovery but known transfers include: (i) the transfer of the interest of Mr. Raspanti in the Defendant Residence in June of 2020 to Ms. Raspanti for no consideration; (ii) transfers of assets and income to maintain the Defendant Residence in the name of Defendant Raspanti throughout this period; and (iii) upon information and belief, other transfers of property in prior periods while Mr. Raspanti was subject to claims by Plaintiff and insolvent including the transfer of assets to Ms. Raspanti that occurred by virtue of the purchase of the Defendant Residence in name of both of Defendants utilizing assets of Mr. Raspanti.

68. In addition, upon information and belief, Mr. Raspanti has transferred additional assets to the name of Ms. Raspanti without fair consideration or reasonably equivalent value including income and assets emanating from business activities of Mr. Raspanti in New York

including the Tenant Business diverted from Defendant as well as income generated from the use of assets of Defendant such as its line of beauty products.

69. These transfers away from Mr. Raspanti were made with actual fraudulent intent to hinder, delay, and/or defraud present or future creditors including Plaintiff and with all of the classic badges of fraud including, *inter alia*: (i) resulting insolvency of the transferor; (ii) the absence of consideration; (iii) insider relationships between the transferring parties; (iv) the retention of possession and use of the property transferred by ownership; (v) the existence of existing claims and impending litigation; (vi) the secrecy of the transfer; and (vii) the transfer to an operating entity which exists as a mere alter ego of the ownership of Tenant.

70. This is particularly true of the transfers made by Mr. Raspanti to Ms. Raspanti in connection with the transfer of his interests in the Defendant Residence to Ms. Raspanti in June of 2020 which were was made to Ms. Raspanti as an insider of Mr. Raspanti, with him continuing to retain possession and control of the property, in an undisclosed transaction, made while threatened with suit from Plaintiff, and without fair consideration after/while incurring extensive debts beyond his ability to repay them.

71. Ms. Raspanti was a knowing and active participant in all of these activities, who was familiar with the financial status of Mr. Raspanti at the time, the fraudulent intent of the transfers, and who directly benefited from them.

72. The transfers constitute fraudulent conveyances made with actual fraudulent intent in violation of DCL § 276 and Plaintiff is entitled to recover attorneys' fees from Ms. Raspanti pursuant to DCL § 276-a.

73. Further, upon information and belief, the transfers away in and after 2020 were made with constructive fraudulent intent insofar as they were made, *inter alia*: (i) without fair consideration; (ii) while Mr. Raspanti was insolvent and/or rendered Mr. Raspanti insolvent; and

(iii) with unreasonably small capital for the business activities in which Mr. Raspanti was engaged or about to engage left with him.

74. Further, the transfers also constitute fraudulent conveyances made with constructive fraudulent intent in violation of DCL §§ 273, 274, and 275 and related laws.

75. By reason of the foregoing, Plaintiff is entitled to and seeks to set aside or disregard the transfer of property away from Mr. Raspanti and attach or levy execution upon the property conveyed to Ms. Raspanti with, *inter alia*: (i) avoidance of the above transfers to the extent necessary to satisfy its claim; (ii) an attachment of the assets in the hands of Ms. Raspanti including the interests in the Defendant Residence transferred to her by Mr. Raspanti; (iii) related injunctive and provisional relief to prevent against further disposition of property by Defendants; (iv) additional relief as circumstances may require; and (v) levy execution upon any asset transferred or its proceeds in connection with any judgment obtained by Plaintiff against Defendants.

76. By reason of the foregoing, Ms. Raspanti is liable to Plaintiff in an amount to be determined at trial, plus interest, as well as costs and fees associated with the Action, including reasonable attorneys' fees and Plaintiff is entitled to the foregoing relief.

## SECOND COUNT
### Insider Transfer Avoidance Pursuant to UVTA §§ 274(b) and 276 and Related Laws
### (Against Ms. Raspanti and Mr. Raspanti as Nominal Defendant)

77. Plaintiff repeats and realleges the foregoing paragraphs of the Complaint.

78. During all periods in and after 2019, Mr. Raspanti was insolvent within the meaning of section 271(a) of New York Debtor Creditor Law with the sum of his debts greater than the sum of his assets at a fair valuation.

79. Further, pursuant to section 271(b) of the UVTA, Mr. Raspanti is presumed to be insolvent at law throughout this period because, as alleged above, he had not been paying his debts to Plaintiff as they become due during the periods in question.

80. Section 274(b) of the UVTA provides that transfers made from insolvent debtors like Mr. Raspanti to insiders are voidable as fraudulent conveyances – even where for antecedent debts – where the insider had reasonable cause to believe that the debtor was insolvent.

81. Pursuant to the UVTA, transfers by Mr. Raspanti to Ms. Raspanti are voidable on these grounds as the UVTA defines insiders to include, *inter alia*: (i) affiliates of debtors [*see, e.g., id.*, § 270(h)(4)]; (ii) officers and persons in control of a corporate debtor, as well as insiders of affiliates of the debtor [*see, e.g., id.*, §§ 270(h)(2)(ii) and (iii) and (h) (4)]; and (iii) other related parties [*see, e.g.,* UVTA §§ 270(h)(2)(i), (ii), (iii), and (vi), and (h) (4)].

82. Mr. Raspanti made transfers to Ms. Raspanti in and after 2020 to present, both directly and/or indirectly, which constitute voidable transfers under the UVTA which included, *inter alia*: (i) direct and indirect transfers of income and assets emanating from business activities in New York including the Tenant Business and asserted diverted by Mr. Raspanti from Tenant after its dissolution; (ii) payment of expenses on behalf of and for the benefit of Ms. Raspanti and her property including expenses associated with maintenance of the Defendant Residence; and (iii) other related payments and transfers made to, on behalf of and/or for the benefit of Ms. Raspanti.

83. Upon information and belief, Ms. Raspanti knew and had reasonable cause to believe that Mr. Raspanti was insolvent at the time that the aforementioned transfers were made as the aforementioned transferees are all related parties intimately aware of the financial affairs and activities of Mr. Raspanti as well as the claims against him by Plaintiff.

84. Upon information and belief, the aforementioned transfers were made without an exchange of reasonably equivalent value or fair consideration, without provision of new value to or for the benefit of the debtor, outside of the ordinary course and financial affairs of the debtor, and without any good-faith intent.

85. Upon information and belief, certain portions of the aforementioned transfers were made ostensibly or in reality on account of antecedent debts.

86. Accordingly, the transfers made from Mr. Raspanti in and after 2020 to or for the benefit of Ms. Raspanti are voidable pursuant to section 274(b) of the UVTA.

87. Further, pursuant to section 276 of the UVTA, Plaintiff is entitled to and seeks to obtain from Ms. Raspanti, *inter alia*: (i) avoidance of the above transfers to the extent necessary to satisfy its claim; (ii) an attachment of the assets of Ms. Raspanti to the extent transferred to her directly or indirectly by Mr. Raspanti; (iii) related injunctive and provisional relief to prevent against further disposition of property of Mr. Raspanti; (iv) additional relief as circumstances may require; and (v) levy execution upon any asset transferred or its proceeds in connection with any judgment obtained by Plaintiff against Mr. Raspanti.

88. Further, by reason of the foregoing, Ms. Raspanti is liable to Plaintiff in an amount to be determined at trial, plus interest, as well as costs and fees associated with the action, including reasonable attorneys' fees.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order granting judgment in favor of Plaintiff and against Ms. Raspanti including the following relief: (i) monetary damages in an amount to be determined at trial; (ii) applicable interest and costs associated with this Action including reasonable attorneys' fees in an amount to be determined at trial; (iii) applicable punitive damages; (iv) avoidance of the aforementioned transfers of assets of Mr. Raspanti to and/or for the benefit of Ms. Raspanti with the other related relief set forth above; and (v) such other and further relief as the Court deems just and proper.

### RESERVATION OF RIGHTS

Plaintiff reserves its right to file such specific amendments and/or additional claims as are applicable hereinafter to this action as the same are ascertained.

### LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby certify that, to my knowledge, except as more fully described in this Complaint with respect to the NY Action, the matter in controversy is not the subject of any other action or proceeding pending in any court or in any pending arbitration or administrative proceeding.

Dated: July 12, 2023

TANENBAUM KEALE LLP

By: s/ Arshia Hourizadeh
Arshia Hourizadeh
ahourizadeh@tktrial.com
Three Gateway Center, Suite 1301
100 Mulberry Street
Newark, New Jersey 07102
*Counsel for Plaintiff Grove Equities LLC*
